1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  AMAZON.COM, INC., a Delaware
    corporation; AMAZON.COM SERVICES LLC,
11  a Delaware limited liability company; and
    NINTENDO OF AMERICA INC., a
12  Washington corporation,

13            Plaintiffs,

14       v.

15  SUNRISE SYSTEMS LLC, a Florida limited
    liability company; DEAL CENTER
16  ELECTRONICS INC., a Florida corporation;
    EVEREST ELECTRONICS LLC, a Florida
17  limited liability company; ANDREY
    SHVEDOV, an individual; IVAN SVEDOV, an
18  individual; NATALIA SHVEDOV, an
    individual; and DOES 1-10,
19
              Defendants.
20

No.

**COMPLAINT FOR DAMAGES AND
EQUITABLE RELIEF**

21            **I.   INTRODUCTION**

22       1.      This case involves Defendants' unlawful and expressly prohibited sale of

23  counterfeit Nintendo-branded accessories for the Nintendo Switch video game console.

24  Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon"), and Nintendo of

25  America Inc. (together with Amazon, "Plaintiffs") jointly bring this lawsuit to permanently

26  prevent and enjoin Defendants from causing future harm to Amazon's and Nintendo's

27

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 1

customers, reputations, and intellectual property ("IP"), and to hold Defendants accountable for their illegal actions.

2.      Amazon.com Services LLC owns and operates the Amazon.com store (the "Amazon Store"), and Amazon's affiliates own and operate equivalent counterpart international stores and websites. Amazon's stores offer products and services to customers in more than 100 countries around the globe. Some of the products are sold directly by Amazon entities, while others are sold by Amazon's numerous third-party selling partners. The Amazon brand is one of the most well-recognized, valuable, and trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in both time and resources to prevent counterfeit and infringing goods from being sold in its stores. In 2024, Amazon invested more than a billion dollars and employed thousands of people—including machine learning scientists, software developers, and expert investigators—who were dedicated to protecting customers, brands, selling partners, and Amazon's stores from counterfeits, fraud, and other forms of abuse.

3.      Nintendo of America Inc., established in 1980 and headquartered in Redmond, Washington, is a wholly owned subsidiary of Nintendo Co., Ltd., a Japanese company headquartered in Kyoto, Japan. Nintendo of America Inc. is responsible for the marketing and sale of Nintendo-branded products, and the enforcement of Nintendo's intellectual property rights, in the United States. Nintendo Co., Ltd. develops, and Nintendo of America Inc. markets and distributes, electronic video game consoles, games, and accessories. Nintendo of America Inc. and Nintendo Co., Ltd. are collectively referred to as "Nintendo."

4.      For decades, Nintendo has been a leading developer and producer of video games and video game consoles. In 1983, Nintendo released the Family Computer in Japan and, in 1985, it released the Nintendo Entertainment System, or "NES," in the United States, which introduced millions of consumers to now-classic games like Super Mario Bros., The Legend of Zelda, and Donkey Kong. Over the past several decades, Nintendo has built upon the popularity of the NES console with the release of groundbreaking home video game consoles, including the

Super Nintendo Entertainment System, Nintendo 64, Nintendo GameCube, Wii, and Wii U, and the Nintendo Switch and Nintendo Switch 2, and groundbreaking handheld video game consoles such as the Game Boy, Game Boy Color, Game Boy Advance, Nintendo DS, Nintendo 3DS, the Nintendo Switch, and recently, the Nintendo Switch Lite (a sister console of the Nintendo Switch dedicated to handheld play) and the Nintendo Switch 2. Since 1983, Nintendo has sold more than 5.97 billion video games and more than 869 million hardware units globally. The Nintendo Switch and Nintendo Switch 2 are consoles that can be played either in handheld mode or connected to a screen via a dock, which is bundled with the console. Additionally, genuine Nintendo Switch dock sets can be purchased separately that include a Nintendo Switch dock, Nintendo Switch AC adapter and HDMI cable.

5.    Nintendo owns, manages, enforces, licenses, and maintains IP, including various trademarks. Relevant to this Complaint, Nintendo owns the following registered trademarks (the "Nintendo Trademarks"):

| **Mark** | **Registration No. (International Classes)** |
| --- | --- |
| (Nintendo) | 1,689,015 (16; 28; 37) |
| NINTENDO | 7,123,503 (3; 5; 9; 11; 14; 16; 18; 20; 21; 24; 25; 27; 28; 29; 30; 32; 35; 38; 41) |
| NINTENDO SWITCH | 5,477,313 (9; 28; 41) |
| NINTENDO SWITCH | 5,443,363 (9; 28; 41) |

True and correct copies of the registration certificates for the Nintendo Trademarks are attached as **Exhibit A**.

6.    Beginning in 2017, Defendants registered with Amazon to sell in the Amazon Store. After extensive outside investigation, Plaintiffs have discovered that Defendants used

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 3

falsified identity documentation and fraudulent information in a deliberate attempt to conceal their identities and locations and circumvent Amazon's robust verification processes. From 2021 through 2025, Defendants advertised, marketed, offered, distributed, and sold counterfeit Nintendo-branded products in the Amazon Store, using the Nintendo Trademarks, without authorization, in order to deceive customers about the authenticity and origin of the products and the products' affiliation with Nintendo.

7.    As a result of their illegal actions, Defendants have infringed and misused Nintendo's IP; breached their contracts with Amazon; willfully deceived and harmed Amazon, Nintendo, and their customers; compromised the integrity of the Amazon Store; and undermined the trust that customers place in Amazon and Nintendo. Defendants' illegal actions have caused Amazon and Nintendo to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from inflicting future harm to Amazon, Nintendo, and their customers.

## II.    PARTIES

8.    Amazon.com, Inc. is a Delaware corporation with its principal place of business in Seattle, Washington. Amazon.com Services LLC is a Delaware company with its principal place of business in Seattle, Washington.

9.    Nintendo of America Inc. is a Washington corporation with its principal place of business in Redmond, Washington.

10.    Defendants are a collection of individuals and entities, both known and unknown, who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this Complaint. Defendants operated, controlled, and/or were responsible for the selling accounts detailed in **Attachment 1** (the "Selling Accounts"). On information and belief, Defendants took intentional and affirmative steps to hide their true identities and whereabouts from Amazon and Nintendo by using one or more falsified and/or fraudulent identity documents and other falsified information to conduct their activities and to circumvent Amazon's robust verification processes. Defendants are subject to liability for their wrongful conduct both directly

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

1
2

and under principles of secondary liability including, without limitation, *respondeat superior*, vicarious liability, and/or contributory infringement.

3
4
5
6
7
8

11.     On information and belief, Defendant Sunrise Systems LLC ("Sunrise Systems"), d/b/a Dynamic Systems USA, is a Florida limited liability company with its principal place of business at 2751 S Ocean Drive Apt. 407S, Hollywood, FL 33019. Sunrise Systems personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct. Defendants Andrey Shvedov and Natalia Shvedov are managers of Sunrise Systems.

9
10
11
12
13
14
15

12.     On information and belief, Defendant Deal Center Electronics Inc. ("Deal Center"), d/b/a Deal Center Electronics US, is a Florida corporation with its principal place of business at 2751 S Ocean Drive Apt. 407S, Hollywood, FL 33019. Deal Center personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct. Defendants Andrey Shvedov, Natalia Shvedov, and Ivan Svedov are officers of Deal Center.

16
17
18
19
20
21

13.     On information and belief, Defendant Everest Electronics LLC ("Everest Electronics"), d/b/a Electronics Unlimited USA, is a Florida limited liability company with its principal place of business at 2751 S Ocean Drive Apt. 407S, Hollywood, FL 33019. Everest Electronics personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct. Defendant Andrey Shvedov is a manager of Everest Electronics.[1]

22
23
24
25

14.     On information and belief, Defendant Andrey Shvedov is an individual residing in Florida. Defendant Andrey Shvedov personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct. As noted above, Defendant Andrey Shvedov

26
27

---

[1] Sunrise Systems, Deal Center, and Everest Electronics are collectively referred to as the "Entity Defendants."

is a manager/officer of the Entity Defendants, which operated the three Selling Accounts detailed in Attachment 1.

15.     On information and belief, Defendant Natalia Shvedov is an individual residing in Florida. Defendant Natalia Shvedov personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct. As noted above, Defendant Natalia Shvedov is a manager/officer of Defendants Sunrise Systems and Deal Center, which operated two of the Selling Accounts detailed in Attachment 1.

16.     On information and belief, Defendant Ivan Svedov is an individual residing in Texas. Defendant Ivan Svedov personally participated in and/or had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct. As noted above, Defendant Ivan Svedov is an officer of Defendant Deal Center, which operated one of the Selling Accounts detailed in Attachment 1.

17.     On information and belief, Defendants Does 1-10 (the "Doe Defendants") are individuals and/or entities working in active concert with each other and the named Defendants to knowingly and willfully manufacture, import, advertise, market, offer, distribute, and sell counterfeit Nintendo-branded products. The identities of the Doe Defendants are presently unknown to Plaintiffs.

### III.    JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over Nintendo's Lanham Act claim for trademark counterfeiting and trademark infringement, and Amazon's and Nintendo's Lanham Act claims for false designation of origin, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). The Court has subject matter jurisdiction over Amazon's breach of contract claim and Amazon's and Nintendo's claims for violation of the Washington Consumer Protection Act, pursuant to 28 U.S.C. §§ 1332 and 1367.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

19.     The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Amazon's and Nintendo's claims arise from those activities. Defendants affirmatively undertook to do business with Amazon, a corporation with its principal place of business in Washington, and sold in the Amazon Store products bearing counterfeit versions of the Nintendo Trademarks and which otherwise infringed Nintendo's IP. Additionally, Defendants shipped products bearing counterfeit versions of the Nintendo Trademarks to consumers in Washington. Each Defendant committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Amazon and Nintendo substantial injury in Washington.

20.     Further, Defendants have consented to the jurisdiction of this Court by agreeing to the Amazon Services Business Solutions Agreement ("BSA"), which provides that the "Governing Courts" for claims to enjoin infringement or misuse of IP rights and claims related to the sale of counterfeit products in the Amazon Store are the state or federal courts located in King County, Washington.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington. Venue is also proper in this Court because Defendants consented to it under the BSA.

22.     Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon and Nintendo reside, (b) injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

## IV.     FACTS

### A.     Amazon's Efforts to Prevent the Sale of Counterfeit Goods.

23.     Amazon works hard to build and protect the reputation of its stores as places where customers can conveniently select from a wide array of authentic goods and services at competitive prices. Amazon invests vast resources to ensure that when customers make purchases in Amazon's stores—either directly from Amazon entities or from one of its millions

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

of third-party sellers—customers receive authentic products made by the true manufacturer of those products.

24.     A small number of bad actors seek to take advantage of the trust customers place in Amazon by attempting to create Amazon selling accounts to advertise, market, offer, distribute, and sell counterfeit products. These bad actors seek to misuse and infringe the trademarks and other IP of the true manufacturers of those products to deceive Amazon and its customers. This unlawful and expressly prohibited conduct undermines the trust that customers, sellers, and manufacturers place in Amazon, and tarnishes Amazon's brand and reputation, thereby causing irreparable harm to Amazon.

25.     Amazon prohibits the sale of inauthentic and fraudulent products and is constantly innovating on behalf of its customers and working with brands, manufacturers, rights owners, and others to improve the detection and prevention of counterfeit products from ever being offered to customers in Amazon's stores. Amazon employs dedicated teams of software engineers, research scientists, program managers, and investigators to prevent counterfeits from being offered in Amazon's stores. Amazon's systems automatically and continuously scan thousands of data points to prevent, detect, and remove counterfeits from its stores and to terminate the selling accounts of bad actors before they can offer counterfeit products. When Amazon identifies issues based on this feedback, it takes action to address them. Amazon also uses this intelligence to improve its proactive prevention controls. In 2024, Amazon's proactive controls blocked more than 99% of suspected infringing listings before a brand ever had to find and report them.

26.     In 2017, Amazon launched Brand Registry, a free service that offers rights owners an enhanced suite of tools for monitoring and reporting potential instances of infringement, regardless of their relationship with Amazon. Brand Registry delivers automated brand protections that use machine learning to predict infringement and proactively protect brands' IP. Brand Registry also provides a powerful Report a Violation Tool that allows brands to search

for, identify, and report potentially infringing products using state-of-the-art image search technology.

27.    In 2018, Amazon launched Transparency, a product serialization service that effectively eliminates counterfeits for enrolled products. Brands enrolled in Transparency can apply a unique 2D code to every unit they manufacture, which allows Amazon, other retailers, law enforcement, and customers to determine the authenticity of any Transparency-enabled product, regardless of where the product was purchased. More than 2.5 billion product units have been verified as genuine through Amazon's Transparency program.

28.    In 2019, Amazon launched Project Zero, a program to empower brands to help Amazon drive counterfeits to zero. Project Zero introduced a novel self-service counterfeit removal tool that enables brands to remove counterfeit listings directly from Amazon's stores. This enables brands to take down counterfeit product offerings on their own within minutes. Since launch, more than 35,000 brands have enrolled in Project Zero.

29.    Amazon uses advanced technology and expert human reviewers to verify the identities of potential sellers. When prospective sellers apply to sell in Amazon's stores, they are required to provide a form of government-issued photo ID, along with other information about their business. Amazon employs advanced identity detection methods such as document forgery detection, image and video verification, and other technologies to quickly confirm the authenticity of government-issued IDs and whether such IDs match the individual applying to sell in Amazon's stores. In addition to verifying IDs, Amazon's systems analyze numerous data points, including behavior signals and connections to previously detected bad actors, to detect and prevent risks.

30.    Similarly, throughout the selling experience in Amazon's stores, Amazon's systems monitor selling accounts to identify anomalies or changes in account information, behaviors, and other risk signals. In the event that Amazon identifies a risk of fraud or abuse, it promptly initiates an investigation using automated and/or human review, may request additional information, and swiftly removes bad actors from its stores.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

31.     In addition to the measures discussed above, Amazon actively cooperates with rights owners and law enforcement to identify and prosecute bad actors suspected of engaging in illegal activity. Lawsuits, like this one, as well as criminal referrals, are integral components of Amazon's efforts to combat counterfeits and other inauthentic products. Since its launch in 2020, Amazon's Counterfeit Crimes Unit has pursued more than 24,000 bad actors through litigation and criminal referrals to law enforcement.

**B.      Nintendo and Its Anti-Counterfeiting Efforts.**

32.     Nintendo has made substantial investments in the development, marketing, and promotion of its innovative products. Nintendo is committed to protecting the hard work and creativity of video game engineers and developers who devote significant time and effort to create experiences that bring smiles to all. Nintendo goes to great lengths to protect consumers from counterfeits of its products, and it is committed to leading efforts to combat counterfeit products.

33.     Nintendo's efforts include registration of the intellectual property rights in and to its video game consoles, software, and accessories in the United States and around the world. Nintendo utilizes both internal and external resources to combat counterfeit and infringing products. Nintendo works with a third-party brand protection service vendor on the detection and removal of product listings violating Nintendo's IP rights that are identified and sold in Amazon's stores. Nintendo works regularly and collaboratively with Amazon to identify counterfeit Nintendo products and to strengthen automated detection and removal of the products from Amazon's stores.

34.     Nintendo is currently enrolled in Brand Registry and Project Zero. Nintendo actively used the tools and protections provided by these programs in response to the counterfeiting activity including that described in this Complaint.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 10

1

2

**C.**    **Defendants Created Amazon Selling Accounts, Agreed Not to Sell Counterfeit Goods, Agreed to Provide Accurate Information to Amazon, and Agreed to Reimburse Amazon for Damages Arising from Customer Refunds.**

3

35.    At various times between 2017 and 2025, Defendants established, controlled, and

4

operated the three Selling Accounts detailed in Attachment 1. Defendants used these Selling

5

Accounts to advertise, market, offer, distribute, and sell counterfeit Nintendo-branded products.

6

In connection with these Selling Accounts, Defendants provided Amazon with names, email

7

addresses, phone numbers, tax identification numbers, banking information, and either

8

government-issued identification for an individual acting on behalf of the Selling Account or a

9

copy of a government-issued record or tax document for the entity operating the Selling

10

Account. In the course of their investigation, Plaintiffs determined that certain Defendants took

11

active steps to mislead Amazon, circumvent Amazon's robust verification processes, and conceal

12

their true locations and identities by providing at least one falsified and/or fraudulent identity

13

document and information in connection with their Selling Accounts.

14

36.    To become a third-party seller in the Amazon Store, an applicant is required to

15

agree to the BSA, which governs the seller's access to and use of Amazon's services and states

16

Amazon's rules for selling in the Amazon Store. By entering into the BSA, each seller represents

17

and warrants that it "will comply with all applicable Laws in [the] performance of its obligations

18

and exercise of its rights" under the BSA. A true and correct copy of the applicable version[s] of

19

the BSA, namely, the version[s] Defendants last agreed to when using Amazon's services, is

20

attached as **Exhibit B**.

21

37.    Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit

22

goods as "deceptive, fraudulent, or illegal activity" that violates Amazon's policies, and Amazon

23

reserves the right to withhold payments and terminate the selling account of any bad actor who

24

engages in such conduct. Ex. B, ¶¶ 2-3. The BSA requires the seller to defend, indemnify, and

25

hold Amazon harmless against any claims or losses arising from the seller's "actual or alleged

26

infringement of any Intellectual Property Rights." *Id.* ¶ 6.1.

27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

38.     Additionally, the BSA incorporates, and sellers therefore agree to be bound by, Amazon's Anti-Counterfeiting Policy, the applicable version of which is attached as **Exhibit C**. The Anti-Counterfeiting Policy expressly prohibits the sale of counterfeit goods in the Amazon Store:

> • The sale of counterfeit products is strictly prohibited.
>
> • You may not sell any products that are not legal for sale, such as products that have been illegally replicated, reproduced, or manufactured[.]
>
> • You must provide records about the authenticity of your products if Amazon requests that documentation[.]
>
> Failure to abide by this policy may result in loss of selling privileges, funds being withheld, destruction of inventory in our fulfillment centers, and other legal consequences.

*Id.*

39.     Amazon's Anti-Counterfeiting Policy further describes Amazon's commitment to preventing the sale and distribution of counterfeit goods in the Amazon Store, and describes the consequences of selling inauthentic products:

> • Sell Only Authentic and Legal Products. It is your responsibility to source, sell, and fulfill only authentic products that are legal for sale. Examples of prohibited products include:
>
>   o Bootlegs, fakes, or pirated copies of products or content
>
>   o Products that have been illegally replicated, reproduced, or manufactured
>
>   o Products that infringe another party's intellectual property rights
>
> • Maintain and Provide Inventory Records. Amazon may request that you provide documentation (such as invoices) showing the authenticity of your products or your authorization to list them for sale. You may remove pricing information from these documents, but providing documents that have been edited in any other way or that are misleading is a violation of this policy and will lead to enforcement against your account.
>
> • Consequences of Selling Inauthentic Products. If you sell inauthentic products, we may immediately suspend or terminate your Amazon selling account (and any related accounts), destroy any inauthentic products in our fulfillment centers at your expense, and/or withhold payments to you.
>
> • Amazon Takes Action to Protect Customers and Rights Owners. Amazon also works with manufacturers, rights holders, content owners, vendors, and sellers to improve the ways we detect and prevent inauthentic products from

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 12

reaching our customers. As a result of our detection and enforcement activities, Amazon may:

 o  Remove suspect listings.

 o  Take legal action against parties who knowingly violate this policy and harm our customers. In addition to criminal fines and imprisonment, sellers and suppliers of inauthentic products may face civil penalties including the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees.

- Reporting Inauthentic Products. We stand behind the products sold on our site with our A-to-z Guarantee, and we encourage rights owners who have product authenticity concerns to notify us. We will promptly investigate and take all appropriate actions to protect customers, sellers, and rights holders. You may view counterfeit complaints on the Account Health page in Seller Central.

*Id.*

40. Additionally, under the BSA, sellers agree that the information and documentation they provide to Amazon in connection with their selling accounts—such as identification, contact, and banking information—will, at all times, be valid, truthful, accurate, and complete. Specifically, the BSA requires that:

- As part of the application process, you must provide us with your (or your business') legal name, address, phone number and e-mail address, as well as any other information we may request. Ex. B. ¶ 1.

- You will use only a name you are authorized to use in connection with a[ny Amazon] Service and will update all of the information you provide to us in connection with the Services as necessary to ensure that it at all times remains accurate, complete, and valid. *Id*. ¶ 2.

- Each party represents and warrants that: (a) if it is a business, it is duly organized, validly existing and in good standing under the Laws of the country in which the business is registered and that you are registering for the Service(s) within such country; (b) it has all requisite right, power, and authority to enter this Agreement, perform its obligations, and grant the rights, licenses, and authorizations in this Agreement; (c) any information provided or made available by one party to another party or its Affiliates is at all times accurate and complete[.] *Id*. ¶ 5.

41. When Defendants registered as third-party sellers in the Amazon Store, and established their Selling Accounts, they agreed not to advertise, market, offer, distribute, or sell

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 13

counterfeit products, and agreed to provide Amazon with accurate and complete information and to ensure that information remained accurate and complete.

42.     Defendants also agreed to reimburse Amazon for any amounts that Amazon was forced to refund to customers who purchased products from Defendants. The BSA provides:

- You will defend, indemnify, and hold harmless Amazon … against any … loss, damage, settlement cost, expense, or other liability … arising from or related to … Your Products, including the … refund … thereof[.] *Id.* § 6.1.

- If we determine that your actions or performance may result in returns, chargebacks, claims, disputes, violations of our terms or policies, violations of law or other risks to Amazon or third parties, then we may in our sole discretion withhold any payments to you for as long as we determine any related risks to Amazon or third parties persist. For any amounts that we determine you owe us, we may … collect payment or reimbursement from you by any other lawful means. *Id.* § 2.

**D.     Defendants' Sale of Counterfeit Nintendo-Branded Products and Provision of False Information to Amazon.**

43.     On information and belief, Defendants registered at least one of the Selling Accounts using false information. Defendants also advertised, marketed, offered, distributed, and sold counterfeit Nintendo-branded products in the Amazon Store. The counterfeit Nintendo-branded products sold by Defendants are identified and described in Attachment 1.

44.     Nintendo has reviewed images of Nintendo-branded products sold by Defendants' Selling Accounts. Nintendo reported to Amazon that the products are inauthentic, bear the Nintendo Trademarks, mimic genuine Nintendo products and packaging and Nintendo has never authorized the sale of such products or the use of the Nintendo Trademarks on such products, and that the products are therefore counterfeit, as detailed in Attachment 1.

45.     In addition, as further detailed in Attachment 1, Defendants submitted invoices to Amazon that purported to show that their counterfeit products came from a supplier of authentic products. Amazon has determined that the invoices were falsified.

46.     On May 2 and 3, 2024, the United States Customs and Border Protection informed Nintendo that it had seized several shipments with a combined total of 100 counterfeit Nintendo Switch docks that Defendant Everest Electronics attempted to import from Hong Kong

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 14

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

to an Amazon fulfillment center in North Carolina. On information and belief, Defendants intended to sell these counterfeit products in the Amazon Store through the Electronics Unlimited USA Selling Account.

**E.    Defendants' Coordinated Sale of Counterfeit Nintendo Products.**

47.    On information and belief, Defendants operated in concert with one another in their advertising, marketing, offering, distributing, and selling of counterfeit Nintendo-branded products. Defendants are associated through common physical addresses; the submission to Amazon of nearly identical falsified invoices relating to Nintendo-branded products; and/or their ownership and operation of the Entity Defendants as set forth in documents filed with the Florida Secretary of State. Defendants also provided Amazon with identical "removal" addresses for the three Selling Accounts, which were used when products sold by the Selling Accounts were returned by customers or when inventory was removed from Amazon's fulfillment centers.

**F.    Amazon Shut Down Defendants' Selling Accounts.**

48.    Defendants falsely represented to Amazon and its customers that the counterfeit and infringing Nintendo-branded products that Defendants sold were genuine products made by Nintendo. Defendants also knowingly and willfully used Nintendo's IP in connection with the advertising, marketing, offering, distributing, and selling of counterfeit and infringing Nintendo-branded products.

49.    At all times, Defendants knew they were prohibited from violating third-party IP rights or any applicable laws while selling products in the Amazon Store, from providing inaccurate information to Amazon and its customers, from misrepresenting the authenticity of the products sold, and from misleading Amazon and its customers through their sale of inauthentic Nintendo products. Defendants have breached the terms of their agreements with Amazon; deceived Amazon's customers and Amazon; infringed and misused the IP rights of Nintendo; harmed the integrity of and customer trust in the Amazon Store; and tarnished Amazon's and Nintendo's brands. Specifically, a number of customers who purchased

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Defendants' Nintendo-branded products complained about the quality and functionality of those products.

50.    After Amazon verified Defendants' sale of counterfeit Nintendo-branded products, it blocked Defendants' Selling Accounts. In doing so, Amazon exercised its rights under the BSA to protect its customers and the reputations of Amazon and Nintendo.

51.    Pursuant to Amazon's A-to-z guarantee, Amazon also proactively issued full refunds to customers who purchased the counterfeit Nintendo-branded products from Defendants. Defendants have not reimbursed Amazon.

## V.    CLAIMS

### FIRST CLAIM
*(by Nintendo against all Defendants)*
**Trademark Counterfeiting and Trademark Infringement – 15 U.S.C. § 1114**

52.    Plaintiff Nintendo incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

53.    Defendants' activities constitute counterfeiting and infringement of the Nintendo Trademarks as described in the paragraphs above.

54.    Nintendo owns the Nintendo Trademarks, and it advertises, markets, offers, distributes, and sells its products using the Nintendo Trademarks. Nintendo uses the Nintendo Trademarks to distinguish its products from the products and related items of others in the same or related fields.

55.    Because of Nintendo's long, continuous, and exclusive use of the Nintendo Trademarks, the Trademarks are understood by customers and the public to signify products from Nintendo.

56.    Defendants unlawfully advertised, marketed, offered, distributed, and sold products bearing counterfeit and infringing versions of the Nintendo Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. Specifically, Defendants intended customers to believe, incorrectly, that

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

the products originated from, were affiliated with, and/or were authorized by Nintendo and likely caused such erroneous customer beliefs.

57.    As a result of Defendants' wrongful conduct, Nintendo is entitled to recover its actual damages, Defendants' profits attributable to the infringement, treble damages, and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, Nintendo is entitled to statutory damages under 15 U.S.C. § 1117(c) for Defendants' use of counterfeit marks.

58.    Nintendo is further entitled to injunctive relief, including an order impounding all counterfeit and infringing products and promotional materials in Defendants' possession. Nintendo has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Nintendo Trademarks are unique and valuable properties that have no readily-determinable market value; (b) Defendants' counterfeiting and infringing activities constitute harm to Nintendo and Nintendo's reputation and goodwill such that Nintendo could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the counterfeit and infringing materials; and (d) the resulting harm to Nintendo, due to Defendants' wrongful conduct, is likely to be continuing.

## SECOND CLAIM
### (by Nintendo and Amazon against all Defendants)
**False Designation of Origin – 15 U.S.C. § 1125(a)**

59.    Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

60.    Nintendo owns the Nintendo Trademarks and advertises, markets, offers, distributes, and sells its products using the trademarks described above, and uses the trademarks to distinguish its products from the products and related items of others in the same or related fields.

61.    Because of Nintendo's long, continuous, and exclusive use of the Nintendo Trademarks, the Trademarks have come to mean, and are understood by customers, users, and the public, to signify products from Nintendo.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF - 17

62.     Amazon's reputation for trustworthiness is at the heart of its relationship with customers. Defendants' actions in selling counterfeits pose a threat to Amazon's reputation because they undermine and jeopardize customer trust in the Amazon Store.

63.     Defendants unlawfully advertised, marketed, offered, distributed, and sold products bearing counterfeit versions of the Nintendo Trademarks with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity. On information and belief, Defendants' wrongful conduct misleads and confuses customers and the public as to the origin and authenticity of the goods and services advertised, marketed, offered, distributed, or sold in connection with the Nintendo Trademarks and wrongfully trades upon Nintendo's goodwill and business reputation.

64.     Further, Defendants deceived Amazon and its customers about the authenticity of the products they were advertising, marketing, offering, distributing, and selling, in direct and willful violation of the BSA and Amazon's Anti-Counterfeiting Policies. Defendants' deceptive acts were material to Amazon's decision to allow Defendants to sell their products in the Amazon Store because Amazon would not have allowed Defendants to do so but for their deceptive acts.

65.     Defendants' misconduct has also caused Amazon to expend significant resources to investigate and combat Defendants' wrongdoing and to bring this lawsuit to prevent Defendants from causing further harm to Amazon and its customers. Defendants' illegal acts have caused irreparable injury to Amazon and, on information and belief, that injury is ongoing at least to the extent that Defendants continue to establish selling accounts under different or false identities. An award of monetary damages alone cannot fully compensate Amazon for its injuries, and thus Amazon lacks an adequate remedy at law.

66.     Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that products originate from or are authorized by Nintendo, all in violation of 15 U.S.C. § 1125(a)(1)(A).

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

67.     Plaintiffs are entitled to an injunction against Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, as set forth in the Prayer for Relief below, along with attorneys' fees and costs in investigating and bringing this lawsuit. Defendants' acts have caused irreparable injury to Plaintiffs. On information and belief, that injury is continuing. An award of monetary damages cannot fully compensate Plaintiffs for their injuries, and Plaintiffs lack an adequate remedy at law.

68.     Nintendo is further entitled to recover Defendants' profits, Nintendo's damages for its losses, and Nintendo's costs to investigate and remediate Defendants' conduct and bring this action, in an amount to be determined. Nintendo is also entitled to the trebling of any damages award as allowed by law. Amazon is also entitled to recover its damages arising from Defendants' sale of counterfeit products in the Amazon Store.

**THIRD CLAIM**
***(by Nintendo and Amazon against all Defendants)***
**Violation of Washington Consumer Protection Act, RCW 19.86.010, *et seq.***

69.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs as though set forth herein.

70.     Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Nintendo-branded products constitute unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020.

71.     Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Nintendo-branded products harm the public interest by deceiving customers about the authenticity, origins, and sponsorship of the products.

72.     Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Nintendo-branded products directly and proximately causes harm to and tarnishes Plaintiffs' reputations and brands, and damages their business and property interests and rights.

73.     Accordingly, Plaintiffs seek to enjoin further violations of RCW 19.86.020 and recover from Defendants their attorneys' fees and costs. Nintendo further seeks to recover from

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

Defendants its actual damages, trebled, and Amazon further seeks to recover from Defendants its actual damages, trebled, arising from Defendants' sale of counterfeit products.

**FOURTH CLAIM**
*(by Amazon.com Services LLC[2] against all Defendants)*
**Breach of Contract**

74.    Plaintiff Amazon incorporates by reference the allegations of the preceding paragraphs as though set forth herein.

75.    Defendants established Amazon selling accounts and entered into Amazon's BSA, a binding and enforceable contract between Defendants and Amazon. Defendants also contractually agreed to be bound by the policies incorporated by reference into the BSA, including Amazon's Anti-Counterfeiting Policy and other policies as maintained on the Amazon seller website.

76.    Amazon performed all obligations required of it under the terms of the contract with Defendants or was excused from doing so.

77.    Defendants' sale and distribution of counterfeit Nintendo-branded products materially breached the BSA and the Anti-Counterfeiting Policy in numerous ways. Among other things, Defendants' conduct constitutes infringement and misuse of the IP rights of Nintendo.

78.    In furtherance of their sale and distribution of counterfeit Nintendo-branded products, Defendants further breached the BSA and its incorporated policies by submitting falsified documents to Amazon in order to obtain approval to sell the products in the Amazon Store, and submitted falsified documents to Amazon again after their Selling Accounts were suspended in an effort to have their Accounts reinstated.

79.    Likewise, in furtherance of their counterfeiting activities, certain Defendants materially breached the BSA and its incorporated policies by providing Amazon with false, fraudulent, or otherwise inaccurate identification, contact, and/or banking information in

---

[2] For the Fourth Claim only, "Amazon" shall refer to Amazon.com Services LLC only.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1640
206.622.3150 main · 206.757.7700 fax

connection with their Selling Accounts, and by failing to update that information such to cure its inaccuracies.

80.     Additionally, Defendants breached the BSA by failing to reimburse Amazon for the amounts it paid to refund customers who purchased counterfeit products from Defendants.

81.     Defendants' breaches have caused significant harm to Amazon, and Amazon is entitled to damages in an amount to be determined.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.     That the Court enter an order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, from:

    (i)     selling counterfeit or infringing products in Amazon's stores;

    (ii)    selling counterfeit or infringing products to Amazon or any Amazon affiliate;

    (iii)   importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Nintendo's brand or trademarks, or which otherwise infringes Nintendo's IP, in any store or in any medium; and

    (iv)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (iii) above;

B.     That the Court enter judgment in Plaintiffs' favor on all claims brought by them;

C.     That the Court enter an order pursuant to 15 U.S.C. § 1118 impounding and permitting destruction of all counterfeit and infringing products bearing the Nintendo Trademarks or that otherwise infringe Nintendo's IP, and any related materials, including

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

business records and materials used to reproduce any infringing products, in Defendants' possession or under their control;

D.      That the Court enter an order requiring Defendants to provide Plaintiffs with a full and complete accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities;

E.      That the Court enter an order requiring Defendants to pay all general, special, and actual damages which Nintendo has sustained, or will sustain, as a consequence of Defendants' unlawful acts, plus Defendants' profits from the unlawful conduct described herein, together with its statutory damages, and that such damages be enhanced, doubled, or trebled as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law, and that Amazon's damages, plus Defendants' profits, related to Defendants' activities involving the sale of counterfeit products be enhanced, doubled, or trebled as provided by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

F.      That the Court enter an order requiring Defendants to pay the maximum amount of prejudgment interest authorized by law;

G.      That the Court enter an order requiring Defendants to pay the costs of this action and Plaintiffs' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, RCW 19.86.020, or otherwise allowed by law;

H.      That the Court enter an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

I.      That the Court grant Plaintiffs such other, further, and additional relief as the Court deems just and equitable.

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

1    DATED this 19th day of December, 2025.

2                                            DAVIS WRIGHT TREMAINE LLP
                                             *Attorneys for Plaintiffs*
3

4                                            */s/ Scott Commerson*
                                             Scott Commerson, WSBA #58085
5                                            350 South Grand Avenue, 27th Floor
                                             Los Angeles, CA 90071-3460
6                                            Tel: (213) 633-6800
                                             Fax: (213) 633-6899
7                                            Email: scottcommerson@dwt.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1640
206.622.3150 main · 206.757.7700 fax

## ATTACHMENT 1

**SELLING ACCOUNT 1:**

Selling Account Name: Dynamic Systems USA
Dates of Known Sales of Infringing Products: June 2, 2023 through March 20, 2025

| Purported Product | Confirmation of Counterfeit |
|---|---|
| Nintendo Switch docks and AC adapters<br><br>ASIN[1]: B083GMQYT9<br><br>B0CKT2P1LN<br><br>B06ZZ6FGGL<br><br>B01N7RUZ49<br><br>B01MT8EQFF<br><br>B071992NQ2<br><br>B08GS2RXQ1<br><br>B01MY9I0C0<br><br>B083SLFPKC | • On March 28, 2025, Amazon provided Nintendo with images of samples of the products offered for sale by this Selling Account.<br><br>• Nintendo examined the images of the products and confirmed that the products were counterfeit based on deviations from Nintendo's authentic product and packaging.<br><br>• Amazon inspected invoices submitted by this Selling Account. The invoices purported to show that Defendants' Nintendo-branded products came from a supplier of authentic products, TD Synnex. TD Synnex informed Amazon that the invoices were falsified based on formatting discrepancies and inconsistencies with TD Synnex's records. |

---

[1] "ASIN" is an abbreviation of "Amazon Standard Identification Number," which is a unique series of ten alphanumeric characters that is assigned to each product listed for sale in Amazon's stores for identification purposes.

**SELLING ACCOUNT 2:**

Selling Account Name: Deal Center Electronics US
Dates of Known Sales of Infringing Products: June 15, 2023 through March 31, 2025

| Purported Product | Confirmation of Counterfeit |
|---|---|
| Nintendo Switch docks and AC adapters<br>ASIN: B083GMQYT9<br>B0CKT2P1LN<br>B06ZZ6FGGL<br>B01N7RUZ49<br>B01MT8EQFF<br>B071992NQ2<br>B08GS2RXQ1<br>B01MY9I0C0<br>B083SLFPKC | • On March 28, 2025, Amazon provided Nintendo with images of samples of the products offered for sale by this Selling Account.<br><br>• Nintendo examined the images of the products and confirmed that the products were counterfeit based on deviations from Nintendo's authentic product and packaging.<br><br>• Amazon inspected invoices submitted by this Selling Account. The invoices purported to show that Defendants' Nintendo-branded products came from a supplier of authentic products, TD Synnex. The invoices were nearly identical to invoices submitted by the Dynamic Systems USA Selling Account that were purportedly issued by the same supplier. TD Synnex had confirmed those invoices were falsified based on formatting discrepancies and inconsistencies with TD Synnex's records. The invoices submitted by the Deal Center Electronics USA Selling Account bore other indicia of falsification such as pixelation of the logo and text. |

**SELLING ACCOUNT 3:**

Selling Account Name: Electronics Unlimited USA
Dates of Known Sales of Infringing Products: July 10, 2021 through April 2, 2025

| Purported Product | Confirmation of Counterfeit |
|---|---|
| Nintendo Switch docks and AC adapters<br>ASIN: B083GMQYT9<br>B0CKT2P1LN<br>B06ZZ6FGGL<br>B01N7RUZ49<br>B01MT8EQFF<br>B08GS2RXQ1<br>B01MY9I0C0<br>B083SLFPKC | • On April 30, 2025, Amazon provided Nintendo with images of samples of the products offered for sale by this Selling Account.<br><br>• Nintendo examined the images of the products and confirmed that the products were counterfeit based on deviations from Nintendo's authentic product and packaging.<br><br>• Amazon inspected an invoice submitted by this Selling Account. The invoice purported to show that Defendants' Nintendo-branded products came from a supplier of authentic products, TD Synnex. The invoice was nearly identical to invoices submitted by the Dynamic Systems USA Selling Account, that were purportedly issued by the same supplier. TD Synnex had confirmed those invoices were falsified based on formatting discrepancies and inconsistencies with TD Synnex's records. The invoice submitted by the Electronics Unlimited USA Selling Account bore other indicia of falsification such as pixelation of the logo and text.<br><br>• On May 2 and 3, 2024, United States Customs and Border Protection informed Nintendo of four separate seizures totaling 100 counterfeit Nintendo Switch docks that Defendant Everest Electronics attempted to import from Hong Kong to an Amazon fulfillment center in North Carolina. On information and belief, Defendants intended to sell these counterfeit products in the Amazon Store through this Selling Account. |